## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANTHONY JOSEPH PUNCH**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO: 21-541**

**KILOLO KIJAKAZI,**                                      **SECTION "G" (3)**
**COMMISSIONER OF SOCIAL SECURITY**

### REPORT AND RECOMMENDATION

Plaintiff Anthony Joseph Punch brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), for judicial review of the partially favorable final decision of the Commissioner finding Plaintiff became disabled on December 1, 2019. The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reason, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

On October 22, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"). The same day, Plaintiff also filed a Title XVI application for supplemental security income ("SSI"). In both applications, Plaintiff alleged disability beginning June 21, 2016. (Rec. Doc. No. 9, p. 14). Plaintiff alleged disability due to degenerative joint disease, degenerative disc disease, osteoarthritis, shoulder tendinitis, bipolar disorder, and depression. (Rec. Doc. No. 14-3, p. 2). The Social Security Commissioner denied the claim administratively on May 7, 2019, and upon reconsideration on October 22, 2019. (Rec. Doc. No. 9, p. 14). Thereafter, Plaintiff filed a written request for a hearing on January 27, 2020. *Id*. On July 15, 2020, Plaintiff, represented by an attorney, appeared and testified at a telephonic hearing before an administrative law judge ("ALJ"). *Id*. A vocational expert also testified. *Id*. The ALJ issued a

partially favorable decision on August 7, 2020, determining that Plaintiff became disabled on December 1, 2019. *Id*. at 26. The effect of this determination is that Plaintiff is ineligible to receive DIB under Title II, as his date last insured for purposes of such a claim was September 30, 2017. (Rec. Doc. No. 14-3, p. 2). Plaintiff also notes that despite the partially favorable decision, he is ineligible to receive SSI under Title XVI due to his wife's income. *Id*. At the time of the ALJ's decision, Plaintiff was forty-nine years old with a high school education and past work experience as a construction worker and a sales representative in the oil and gas industry and construction equipment industry. *Id*. at 1.

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).[1] In relevant part, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 21, 2016, the alleged onset date. (Rec. Doc. No. 9, p. 17). The ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease, osteoarthritis, degenerative disc disease, shoulder tendinitis, bipolar disorder, and depression. *Id*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments to qualify for presumptive disability. *Id*. The ALJ then determined that *prior* to December 1, 2019, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [Plaintiff] can concentrate for two hour periods before and after regular breaks and lunch; he can occasionally interact with the general public; he can lift fifteen pounds occasionally and ten pounds frequently; he can walk and/or stand for two hours in an eight-hour day for fifteen minutes at a time; he can sit for six hours in an eight-hour day for two hours at a time; he can occasionally stoop and climb, but cannot crouch, kneel or crawl; he can push and pull less than fifteen pounds with the right lower extremity and the dominant right upper extremity; he can frequently grasp and handle with the dominant right upper extremity; and he can do no work with heights, hazardous machinery, commercial driving or ladders.

---

[1] *See also* Section III. Entitlement to Benefits Under the Act, *infra* pp. 5-6.

(Rec. Doc. No. 9, p. 19). Beginning on December 1, 2019, the ALJ determined Plaintiff had an RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [Plaintiff] can concentrate for two hour periods before and after regular breaks and lunch; he can occasionally interact with the general public; he can lift fifteen pounds occasionally and ten pounds frequently; he can walk and/or stand for two hours in an eight-hour day for fifteen minutes at a time; he can sit for six hours in an eight-hour day for two hours at a time; he can occasionally stoop and climb, but cannot crouch, kneel or crawl; he can push and pull less than fifteen pounds with the right lower extremity and the dominant right upper extremity; **he cannot reach overhead with the dominant right upper extremity**; he can frequently grasp and handle with the dominant right upper extremity; and he can do no work with heights, hazardous machinery, commercial driving or ladders. **The [Plaintiff's] right hand will be occasionally numb and cannot feel texture; and he will be off task with extra breaks 15% day due to combination mental and physical impairments.**

(Rec. Doc. No. 9, p. 23) (emphasis added). As emphasized, the RFC following December 1, 2019, includes additional limitations relevant to the analysis below.

The ALJ determined that since the alleged onset date, Plaintiff was unable to perform any past relevant work. *Id*. at 24. The ALJ concluded, with the assistance of the vocational expert, that *prior* to December 1, 2019, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including general office clerk positions. *Id*. Beginning on December 1, 2019, the ALJ concluded, with the assistance of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id*. Accordingly, the ALJ concluded that Plaintiff was not disabled prior to December 1, 2019, but he became disabled on that date and continued to be disabled through the date of the decision. *Id*. at 26. The ALJ also stated that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through September 30, 2017, the date

last insured, for the purposes of qualifying for DIB. *Id.*

Plaintiff sought review with the Appeals Council on October 16, 2020. (Rec. Doc. No. 14-3, p. 3). The Appeals Council denied the request for review on January 12, 2021, making the ALJ's decision the final decision of the Commissioner for judicial review. *Id.*

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at

135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence existed to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only his previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.    ISSUES ON APPEAL

Plaintiff raises one issue on appeal, with three subparts:

Whether the ALJ followed the proper legal standards in determining Plaintiff's RFC and established onset date such that the findings are supported by substantial evidence.

    a.  Whether the ALJ neglected to evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a.

    b.  Whether the ALJ failed to include Plaintiff's limitations with concentration, persistence, and pace in accordance with SSR 16-3p prior to December 1, 2019.

    c.  Whether the ALJ arbitrarily assigned an onset date of disability and failed to provide support for the amendment as required by SSR 18-1p.

## V.    ANALYSIS

**1.  Whether the ALJ followed the proper legal standards in determining Plaintiff's RFC and established onset date such that the findings are supported by substantial evidence.**

Plaintiff points to three instances in which the ALJ allegedly failed to follow the proper legal standard when determining the RFC: (1) the ALJ neglected to evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a; (2) the ALJ failed to factor in the Plaintiff's limitations with concentration, persistence, and pace in accordance with Social Security Ruling ("SSR") 16-3p; and (3) the ALJ arbitrarily assigned an onset date, failing to provide proper reasoning or evidence to support such an amendment. (Rec. Doc. No. 14-3, p. 7). As a result of these alleged errors, Plaintiff contends that the ALJ's findings are not supported by substantial evidence. *Id*.

**a.  Whether the ALJ neglected to evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a**

Plaintiff argues that at step two of the sequential analysis, the ALJ determined that Plaintiff's bipolar disorder and depression were severe impairments. (Rec. Doc. No. 14-3, p. 7). However, Plaintiff contends, the ALJ then failed to evaluate the severity of such impairment and its functional limitations in the RFC analysis, as required by 20 C.F.R. § 404.1520a. *Id*. at 8. Plaintiff contends that the failure to adhere to the guidelines set forth in the regulations constitutes an error of law. *Id*. Plaintiff states that the RFC finding for the period prior to December 1, 2019,

"does not account for Plaintiff's impairments that significantly contribute to his ability to maintain focus." *Id*. at 8-9. Plaintiff further states that the ALJ's opinion does not explain why Plaintiff's ability to maintain concentration decreased significantly after December 1, 2019, and points to Plaintiff's testimony that his worst bipolar episode followed the 2016 work accident that brought on his physical impairments. *Id*. at 9.

The Commissioner contends that the ALJ properly evaluated Plaintiff's mental impairments, and that the assertion that the ALJ did not conduct the proper analysis is incorrect. (Rec. Doc. No. 17-1, p. 5). The Commissioner further notes that Plaintiff has failed to assert what additional limitations the ALJ should include in the RFC. *Id*. at 6. Further, the Commissioner argues that the objective medical evidence does not support additional limitations other than those included in the RFC, pointing to evidence in the record from consultative examinations. *Id*. The Commissioner contends that the RFC formulated by the ALJ adequately accounts for his limitations, and Plaintiff fails to show otherwise. *Id*.

20 C.F.R. § 404.1520a involves evaluation of mental impairments. This section sets forth the review process for evaluating the severity of mental impairments in adults. 20 C.F.R. § 404.1520a(a). This process requires the ALJ to rate the degree of functional limitation across four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. § 404.1520a(b)-(c). These four areas are rated on a five-point scale based on degrees of limitation: none, mild, moderate, marked, and extreme. § 404.1520a(c)(4).

There is no merit to Plaintiff's argument. Plaintiff cites one paragraph of the ALJ's opinion that discusses mental health impairments, but simply ignores the multiple paragraphs in which the ALJ conducted the appropriate review process for evaluating the severity of Plaintiff's mental

impairments. Here, the ALJ expressly followed § 404.1520a when evaluating Plaintiff's mental

impairments and determined the following:

> In understanding, remembering, or applying information, the claimant has a mild limitation. The claimant reported some difficulties with his memory (Exhibit 10E/6). Treatment notes generally indicated the claimant was able to read, write and do simple math with normal memory, normal understanding and average intellect (Exhibits 5F/6; 9F/7; 11F/5). The mental consultative examiner, Carlos Kronberger, PhD, indicated the claimant could follow instructions with normal thought processes, adequate memory and average intellect with an ability to remember simple and complex instructions.
>
> In interacting with others, the claimant has a moderate limitation. The claimant testified that he became reclusive at times and avoided conversations with people that did visit him and his wife, but became excessively talkative during manic periods. Treatment notes generally indicated the claimant as cooperative with a normal mood and normal affect, but as depressed and tearful at times and with pressured speech at other times (Exhibit 1F/7-8, 12-13, 18, 22, 41; 5F/6; 6F/11; 8F/3; 9F/7; 11F/5). The mental consultative examiner indicated the claimant was cooperative and communicative with intelligible speech, but with limited social comprehension, concluding moderate social limitations (Exhibit 4F/3-5).
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant reported difficulties with concentration and completing tasks (Exhibit 10E/6). Treatment notes generally indicated the claimant was alert with normal attention, normal recall and normal concentration, but was noted as impulsive with decreased concentration at times (Exhibits 2F/3; 5F/6; 7F/3; 8F/3; 11F/5). The mental consultative examiner indicated the claimant gave adequate effort, but was inattentive consistent with moderate limitations with concentration (Exhibit 4F/3-5).
>
> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant testified that he relies on his wife to help with tasks around the home, including shopping. Treatment notes generally indicated the claimant was appropriately dressed with normal insight and judgment, but appeared disheveled with limited judgment and hyperactive (Exhibits 8F/3; 9F/7; 11F/5). The mental consultative examiner indicates the claimant was capable of self-care and some chores with help, along with fair insight (Exhibits 4F/3-4).

(Rec. Doc. No. 9, pp. 18-19). Accordingly, the Court finds that the ALJ did not neglect to evaluate

Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a, and in fact followed the

regulations correctly in assessing the severity of Plaintiff's mental impairments.

> **b. Whether the ALJ failed to include Plaintiff's limitations with concentration, persistence, and pace in accordance with SSR 16-3p prior to December 1, 2019**

Plaintiff contends that he has additional limitations that are not contained in the RFC assessment, based on "substantial evidence in the case record, the reports of Plaintiff to his medical providers, and Plaintiff's credible testimony at the administrative hearing." (Rec. Doc. No. 14-3, p. 10). In particular, Plaintiff contends that the ALJ failed to factor into the RFC analysis all of the limitations that stem from his physical impairments, "namely the pain and numbness and how they negatively affect his ability to maintain concentration, persistence, and pace." *Id*. Plaintiff contends that the ALJ failed to act in accordance with SSR 16-3p, and because the ALJ improperly evaluated the complaints of pain, the RFC assessment does not include all of the limitations that stem from Plaintiff's impairments for the time prior to December 1, 2019. *Id*. at 11. Specifically, Plaintiff states that the ALJ failed to include limitations regarding Plaintiff's ability to concentrate and maintain pace due to chronic and severe pain and frequent numbness of the bilateral upper extremities. *Id*. Plaintiff argues that because of his inability to sustain concentration and maintain pace, Plaintiff "would have likely been off task fifteen percent (15%) or more of the workday prior to December 1, 2019," therefore, the ALJ failed to properly evaluate the impact of Plaintiff's pain. *Id*.

The Commissioner argues that the ALJ considered all of Plaintiff's impairments, both physical and mental, to properly determine the RFC. (Rec. Doc. No. 17-1, p. 7). The Commissioner notes that although Plaintiff argues that the post-December 1, 2019 RFC should apply to the entire period, Plaintiff does not cite to anything in the record to support this assertion. *Id*. Finally, the Commissioner notes that the ALJ in fact included limitations in the pre-December 1, 2019 RFC that speak directly to Plaintiff's limitations in concentration, persistence, and pace, specifically finding that Plaintiff could concentrate for two hour periods before and after regular breaks and

lunch. *Id*. The Commissioner states, "This court should decline what amounts to Plaintiff's invitation [to] shift the burden." *Id*.

Plaintiff cites to portions of SSR 16-3p, which involves "Evaluation of Symptoms in Disability Claims." The relevant portion of SSR 16-3p cited by Plaintiff to suggest the ALJ improperly evaluated Plaintiff's complaints by failing to include all limitations in the RFC specifically states:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

> Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing before an administrative law judge or hearing officer. The subjective statements of the individual and witnesses obtained at a hearing should directly relate to symptoms the individual alleged.

SSR 16-3p. Again, the Court finds no merit to the contention that the ALJ failed to account for all symptoms and limitations in the opinion. Plaintiff simply chooses to ignore the many paragraphs in the decision in which the ALJ thoroughly analyzed the aforementioned symptoms. Specifically, the ALJ expressly provides that Plaintiff "can concentrate for two hour periods before and after regular breaks and lunch," and limited Plaintiff to performing "no work with heights, hazardous machinery, commercial driving, or ladders," and accounted for issues in his bilateral extremities by including the limitations that "he cannot reach overhead with the dominant right upper extremity" nor "push and pull" more than fifteen pounds with the right lower extremity and the dominant right upper extremity, (Rec. Doc. No. 9, p. 19) In addition, the ALJ included thorough and specific analysis of all Plaintiff's alleged symptoms, to wit:

At the hearing, the claimant testified that he could no longer work, due to his back and shoulder pain and mental impairments. He testified that he has tendinitis in his right shoulder and difficulties with his left shoulder as well. He testified that it was hard to move and grasp things with his dominant right hand and was told by his doctor to not lift more than fifteen pounds, but rarely lifted anything of significant weight. He testified that his back pain was due to disc issues in his lower back that limited his ability to bend and twist with it getting worse as time went on. He testified that during this time he could not vacuum, but could still do dishes, laundry and grocery shop. He testified that he could also stand for fifteen-minute increments, before needing to sit and walk to the end of his block before needing a break. The claimant testified that he could sit for a one-hour period before needing to stand up. He testified that he was getting monthly injections that brought his pain down from a 9/10 to 6 to 7/10 for about three weeks. He also reported using a brace at times for his back and shoulder (Exhibits 6E/7; 10E/7). The claimant testified that he also had difficulties with his depression and bipolar disorder with him becoming reclusive from others and avoiding interactions, but that he would talk excessively during his manic periods. He testified that he lived with his wife, who helped him around the home, including showering and dressing when needed. Finally, the claimant reported difficulties with concentration and completing tasks (Exhibit 10E/6).

Regarding the claimant's lower back impairment, the record indicates the claimant complained of lower back pain that radiated into his legs and increased with activity (Exhibits 2F/2; 4F/2; 5F/3; 6F/3, 5-7; 10F/12-13). However, despite these complaints, examinations generally showed normal strength, normal reflexes, negative straight leg raise and a normal gait. There were also less optimal findings, including at times tenderness, decreased range of motion, positive facet loading, FABER, straight leg and Milgram testing, ambulating slowly, uncoordinated walking, getting off examination table with difficulty, difficulty bending and squatting and a diagnosis of degenerative disc disease of the lumbar spine (Exhibits 1F/8, 12-13, 18, 21-22, 28-29, 33-34, 41; 2F/3-4; 4F/3; 5F/2-4, 6; 6F/3-4, 7-8; 10F/12). Diagnostic imaging also corroborated the examination findings, revealing chronic compression fracture of the T12 superior end plate, disc extrusions from L3 to L5, moderate neural foraminal stenosis L3 to S1 and bilateral L3 nerve roots that are abutted at L3 to L4 with the right exiting L4 nerve root displaced (Exhibits 6F/3-4, 8). The claimant was prescribed medications as a result of these conditions, including Norco and Gabapentin (Exhibits 1F/10; 4F/3; 6F/3, 8). The claimant has also tried alternative treatments, including injections and physical therapy (Exhibit 6F/3, 5, 15-20).

Regarding the claimant's shoulder impairments, the record indicates the claimant complained of dull shoulder pain that is aggravated by reaching and overhead activity, along with numbness running down his arm at times (Exhibits 1F/6, 10, 16, 20, 27, 39; 2F/2; 4F/2; 5F/3; 7F/2). However, despite these complaints, examinations generally showed good strength, normal reflexes, normal hand strength, normal sensation, no swelling, negative Spurling, Tinel and compression tests. There were also less optimal findings, including at times crepitus, painful range of motion, strength limited by pain, positive Hawkin's test and diagnoses of degenerative joint disease, osteoarthritis and right shoulder tendinitis (Exhibits 1F/7-8, 12-13, 16-18, 21-22, 28-29, 32-34, 40-42; 2F/3-4;

5F/2, 6; 6F/5-6). Diagnostic imaging also corroborated the examination findings, revealing tendinosis of the supraspinatus and infraspinatus tendons without a full thickness tear with AC joint hypertrophy with associated spurring, a small joint effusion and some evidence of carpal tunnel syndrome with EMG testing (Exhibits 1F/4, 10, 14). The claimant was prescribed medications as a result of these conditions, including Flexeril and Meloxicam (Exhibits 1F/9, 31; 4F/3). The claimant has also tried alternative treatments, including injections and a shoulder brace (Exhibit 1F/14, 31).

Regarding the claimant's mental health impairments, the record indicates the claimant complained of depression, stress, poor sleep, staying home, needing reminders, limited concentration, limited memory, racing thoughts, anxiety, nightmares, fatigue, hopelessness, loneliness and variable appetite (Exhibits 2F/6; 4F/3-4; 5F/3; 6F/7; 8F/4-5; 10F/13). However, despite these allegations, the claimant was generally noted to be well groomed, alert, communicative and cooperative with a normal mood, normal affect, normal attention, normal concentration, normal recall, normal memory, normal understanding, normal insight, normal judgment and average intellect. There were less optimal findings as well, including at times appearing depressed, disheveled, tearful, distractible and hyperactive with pressured speech, decreased concentration, decreased attention, limited judgment and diagnoses of bipolar disorder and depression (Exhibits 1F/7-8, 12-13, 18, 22, 41; 2F/3; 4F/3-5; 5F/6; 6F/11; 7F/3; 8F/3; 9F/7- 8; 11F/5). The claimant was prescribed medication, such as Lithium, for this impairment (Exhibits 4F/3; 7F/2; 8F/4). There is no evidence of any inpatient psychiatric hospitalizations during the relevant period (Exhibit 4F/2.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to December 1, 2019, for the reasons explained in this decision.

(Rec. Doc. No. 9, pp. 20-21).

Accordingly, the ALJ considered all of Plaintiff's alleged symptoms, in detail, in reaching the RFC determination. Furthermore, Plaintiff fails to point to any evidence whatsoever in the medical record or testimony that supports additional limitations in concentration prior to December 1, 2019. As the Commissioner notes, Plaintiff bears the burden of proving he is disabled. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Finally, the Court notes that the ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports the decision or all

the evidence that is rejected. *Falco v. Shalala,* 27 F.3d 16, 164 (5th Cir.1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett,* 67 F.3d at 564. Furthermore, courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence". *See Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir. 1988) (citations omitted). An ALJ's RFC determination is entitled to considerable deference. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Here, not only did the ALJ include limitations specifically addressing concentration, persistence, and pace, but the ALJ further provided ample analysis of Plaintiff's symptoms in determining the RFC in accordance with SSR 16-3p. Accordingly, the ALJ committed no error, and the RFC determination is supported by substantial evidence.

### c. Whether the ALJ arbitrarily assigned an onset date of disability and failed to provide support for the amendment as required by SSR 18-1p

Finally, Plaintiff argues that the ALJ failed to provide substantial evidence to support the established onset date of December 1, 2019. (Rec. Doc. No. 14-3, p. 11). Plaintiff contends that the finding that his ability to maintain concentration, persistence, and pace declined to cause Plaintiff to become fifteen percent off task at any job and the post December 1, 2019 RFC, "fail[ed] to provide substantial evidence explaining the reason for this significant decline in ability at that point in time." *Id*. at 12. Plaintiff contends that his hearing testimony alone "do[es] not constitute enough evidence to support such a drastic amendment of an onset date after the date last insured." *Id*.

The Commissioner argues that the ALJ properly determined that as of December 1, 2019, Plaintiff had additional RFC limitations that rendered him unable to perform other jobs in

significant numbers in the national economy. (Rec. Doc. No. 17-1, p. 8). The Commissioner points to Plaintiff's hearing testimony, as well as medical reports that are consistent with complaints of worsening pain, decreased range of motion, and increased tenderness in late 2019 and early 2020. *Id*. "As such, the ALJ fulfilled his duty and properly considered the evidence to determine Plaintiff's disability onset." *Id*. The Commissioner notes that SSR 18-1p expressly permits the ALJ to infer an onset date, and the ALJ here did just that in reliance on the evidence in the record. *Id*.

Social Security Ruling 18-1p states that an ALJ "may, but is not required to, call upon the services of a medical expert, to assist with inferring the date that the claimant first met the statutory definition of disability." Accordingly, an ALJ has complete discretion over the calling of medical experts. *Royal v. Commissioner of Social Security Administration*, 2021 WL 4190647, at *2 (S.D. Miss. Aug. 3, 2021) (citing *Kushner v. Commissioner Social Security*, 765 F.App'x 825, 829 n.3 (3d Cir. 2019)). "SSR 18-1p expressly permits the ALJ to 'infer' an onset date and emphasizes that the decision to call on a medical advisor 'is always at the ALJ's discretion.'" *Royal*, 2021 WL 4190647, at *2 (citing *Ramon Ochoa v Berryhill*, No. 18-287 SCY, 2019 WL 1596368, at *7 n.6 (D.N.M. Apr. 15, 2019)).

While the ALJ did not call a medical advisor here, as is squarely within his discretion, there is substantial evidence to support the established onset date of December 1, 2019. First, the ALJ considered hearing testimony provided by Plaintiff that his lower back pain worsened in the six to eight months prior to the hearing.[2] The ALJ further stated:

---

[2] [ALJ]: Has your condition gotten better or worse over time?
[Plaintiff]: *It's getting worse and the doctor say it's going to continue to get worse because they found I have degenerative disc so they just keep falling apart [INAUDIBLE] away.*
[ALJ]: When did that get to be as bad as it is now?
[Plaintiff]: *Within the last six to eight months* it just even, it got so worse I even stopped doing the dishes and folding laundry because of the leaning and twisting and turning so, yeah, it's, *within the last six to eight months* it's gotten a little worse so it just continues to get worse.
…
[ALJ]: Are you able to go grocery shopping?

At the hearing, the claimant testified that his lower back pain has worsened in the seven to eight months. This is consistent with complaints or worsening pain in late 2019 and early 2020 with evidence of decreased range of motion and increased tenderness during this time, as well as decreased sensation in the lower extremities with complaints that pain was still exacerbated with activity (Exhibits 10F/5-7, 9-12). He also had an MRI that noted continued evidence of moderate degenerative changes throughout his lumbar spine (Exhibit 10F/17). He was also noted with continued evidence of positive FABER testing and decreased upper extremity sensation, along with new complaints of cervical pain (Exhibit 10F/5-6, 17).

The claimant also had continued evidence of depression during this time with him noted as tearful and depressed (Exhibits 9F/6-7; 11F/5).

(Rec. Doc. No. 9, p. 23).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). Ultimately, this Court will not "re-weigh the evidence or substitute our judgment for that of the Commissioner." *Boyd*, 239 F.3d at 704 (internal quotation marks and citation omitted). Here, substantial evidence from both the medical record and Plaintiff's own hearing testimony supports the ALJ's established onset date of December 1, 2019. Thus, there is no error, and the ALJ's RFC decision is supported by substantial evidence.

---

[Plaintiff]: I tried that a few times but that was about *eight months ago*. I haven't done that in a while.
…
[Attorney]: And as far as household chores go you said in the last six to eight months you haven't done dishes or laundry but starting back after the accident in 2016 what were you able to do around the house?
[Plaintiff]: I was actually doing the dishes and keeping like the counter top clean and the bathroom counter top clean and doing laundry but it would take two, three times as long as it used to normally because I would have to break and stop because of the low back and there was a few times like maybe a year ago I did try to vacuum and that didn't work, pushing and the pulling, that didn't work. That was probably *over a year ago*.
…
[Attorney]: What about walking? What's the farthest you think you could walk? Can you do a block or is that too much?
[Plaintiff]: Well, *about six to eight months ago* I used to go like to the end of my street. That's about four or five houses there and back. I tried to go around the corner once but I didn't go far, came back. That was probably about eight months ago.
(Rec. Doc. No. 9, pp. 41, 43-44) (emphasis added).

VI.    **CONCLUSION**

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**,

the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH**

**PREJUDICE.**

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days

after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b)

and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a

district judge; and (2) appellate review of the un-objected-to factual findings and legal

conclusions accepted by the district court, except upon grounds of plain error. *Douglass v.*

*United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 7th day of July, 2022.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**